UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

APRIL L. JORDAN,[1] on behalf of M.E.J,

                       **Plaintiff,**

                v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[2]

                  **Defendant.**
_____

**REPORT AND
RECOMMENDATION**

12-CV-1450
(NAM/VEB)

# I. INTRODUCTION

In August of 2009. Plaintiff April L. Jordon, the mother and natural guardian of M.E.J. ("Claimant"),[3] filed an application on Claimant's behalf for Supplemental Security Income ("SSI") benefits under the Social Security Act, alleging disability due to idiopathic hypohidrosis/anhidrosis.[4] The Commissioner of Social Security denied the application.

Plaintiff, *pro se*, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On October 2, 2013, the Honorable Gary L. Sharpe, Chief United States District

---

[1]Per the administrative record, the correct spelling of Plaintiff's surname is "Jordon." (Docket No. 14, T at 11). The Clerk of the Court is instructed to correct the docket.

[2]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[3]M.E.J. is a minor child. Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil Procedure, she will be referred to as "Claimant" in this Report and Recommendation.

[4]This condition involves an inability to sweat, which causes difficulties in regulating body temperature. (T at 175).

Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 18).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff is the mother of Claimant, a minor child.  On August 18, 2009, Plaintiff filed an application for SSI benefits on Claimant's behalf, alleging disability beginning June 28, 2007. (T at 84-86).[5]  The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On December 15, 2010, a hearing was held in Glens Falls, New York before ALJ Michelle Marcus. (T at 28).  Claimant and Plaintiff appeared without an attorney. (T at 30-31). Plaintiff testified. (T at 33-44).

On January 6, 2011, ALJ Marcus issued a written decision denying the application for benefits and finding that Claimant was not disabled within the meaning of the Social Security Act.  (T at 8-27).   The ALJ's decision became the Commissioner's final decision on July 30, 2012, when the Social Security Appeals Council denied Plaintiff's request for review.  (T at 1-5).

On September 20, 2012, Plaintiff, acting *pro se* and on Claimant's behalf, commenced this action by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff filed a supporting Brief on November 6, 2012, with additional medical evidence attached. (Docket No. 10).  The Commissioner interposed an Answer on January 24, 2013. (Docket No. 13).   The

---

[5]Citations to "T" refer to the Administrative Transcript.  (Docket No. 14)

Commissioner filed a Brief in opposition on March 11, 2013. (Docket No. 16).

Pursuant to General Order No. 18, as issued by the Chief District Judge of the Northern District of New York, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons set forth below, it is recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and this case be closed.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct.

1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be

employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; Kittles v. Barnhart, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); Ramos v. Barnhart, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C .F.R. § 416.924(b); Kittles, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires an examination as to whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). Id. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7. If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); Ramos, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in

six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); <u>Ramos</u>, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

 Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); <u>Ramos</u>, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); <u>Ramos</u>, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

**B.** **Analysis**

**1.** **Commissioner's Decision**

The ALJ noted that Claimant was born on June 28, 2007, and was therefore a "young infant," as defined under the applicable Social Security Regulations, on August 3, 2009 (the date the initial application for benefits was filed) and an "older infant," on January 6, 2011 (the date of the ALJ's decision). (T at 14). The ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision. (T at 14). The ALJ further determined that Claimant's idiopathic hypohidrosis/anhidrosis was a "severe" impairment under the Social Security Act. (T at 14).

The ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). (T at 15). The ALJ also concluded that Claimant did not have an impairment or combination of impairments that functionally equaled one or more of the impairments set forth in the Listings. (T at 15-23).

As such, the ALJ found that Claimant had not been disabled, as defined under the Social Security Act, from the date the application for benefits was filed to the date of the ALJ's decision. (T at 23-24). As noted above, the ALJ's decision became the Commissioner's final decision on July 30, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-5).

**2.** ***Pro Se* Standard**

In evaluating the arguments raised in Plaintiff's Brief, this Court is mindful that a *pro se* litigant's submissions must be construed liberally and interpreted "to raise the strongest arguments that they suggest." <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d

Cir.2006).  Moreover, "[i]n pro se cases, a reviewing court must perform a 'searching investigation' of the record to ensure that the claimant's rights were protected." <u>Maestre v. Apfel</u>, No. 96 Civ. 8273, 1998 WL 477950, *4 (S.D.N.Y. Aug. 13, 1998) (quoting <u>Robinson v. Secretary of Health & Human Servs.</u>, 733 F.3d 255, 258 (2d Cir.1984)) (other citation omitted).  Accordingly, this Court will consider each aspect of the ALJ's decision to determine whether it was supported by substantial evidence.  In addition, this Court will consider whether new evidence attached to Plaintiff's Brief warrants a remand for further consideration.

### 3.      Severity & Listings Analysis

The medical evidence indicates that Claimant suffers from anhidrosis (also known as hypohidrosis). This serious (and potentially life-threatening) condition involves an inability to sweat, which causes difficulties in regulating body temperature. (T at 175).  Dr. Suketu Patel, a treating dermatologist, described the condition as "idiopathic," i.e. of unknown cause or origin. (T at 200). There is also evidence that Claimant has mild asthma, which may be related to the anhidrosis. (T at 184).

The ALJ concluded that Claimant's anhidrosis was a severe impairment. (T at 14). This was certainly consistent with the evidence and is not challenged by Plaintiff.

The ALJ found that Claimant's asthma was not a severe impairment.  (T at 14). Although Plaintiff does not directly challenge this finding, this Court has reviewed the record and finds substantial evidence to support the ALJ's conclusion that Claimant's asthma does not cause more than a minimal limitation in functioning.  <u>See</u> C.F.R. § 416.924(c).  Dr. Gregory W. Runkel, Claimant's treating pediatrician, described Claimant's asthma as asymptomatic, but for a single incident in November of 2008. (T at 175-76).  Dr. Runkel did

8

not report any limitations arising from the condition. (T at 175-78, 212). This Court finds no error in the ALJ's analysis. In addition, because the ALJ continued with the sequential analysis and considered Claimant's asthma when assessing her overall limitations, any error would have been harmless. See McCartney v. Comm'r of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments.").

The next question is whether Claimant's anhidrosis impairment meets or medically equals a presumptively disabling condition identified in the Listings. The ALJ found that the impairment did not meet or medically equal a Listed impairment. (T at 15).

Listings §108.00 identifies several skin disorders that may be considered presumptively disabling. Anhidrosis is not among those disorders. Plaintiff has not cited, and this Court has not found, any other conditions in the Listings that might arguably apply. Dr. Bostic, a non-examining State Agency review consultant, found that Claimant's impairment did not meet or medically equal a listed impairment. (T at 184). The ALJ reasonably relied on this assessment, which was not contradicted by any evidence of record. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Accordingly, this Court finds no error with regard to this aspect of the ALJ's decision.

**4.    Functional Equivalence Analysis**

As outlined above, if a child claimant's impairments do not meet or medically equal one of the impairments set forth in the Listings, the Commissioner must determine whether the impairment or combination of impairments are functionally equivalent to a Listing. Analysis of functionality is informed by consideration of how a claimant functions in six (6) main areas, which are referred to as "domains." 20 C.F.R. § 416.926a(b)(1).

In the present case, the ALJ determined that Claimant had: (1) no limitation in acquiring and using information; (2) no limitation with regard to attending to and completing tasks; (3) no limitation with respect to interacting with and relating to others; (4) no limitation in moving about and manipulating objects; (5) no limitation in the ability to care for himself; and (6) less than a marked limitation with regard to health and physical well-being. (T at 17-23).

This Court will examine the evidence with respect to Claimant's functioning in each of these domains in turn.

**i.    Acquiring and Using Information**

The domain of acquiring and using information considers the child's ability to acquire or learn information and how well the child uses the information he or she has learned.  20 C.F.R. § 416.926a(g).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she does not demonstrate understanding of words about space, size, or time; cannot rhyme words or the sounds in words; has difficulty recalling information learned in school the previous day; has difficulty

solving mathematical problems; and/or talks in short, simple sentences and his difficulty explaining what he or she means. 20 C.F.R. § 416.926a(g)(3).

The ALJ found that Claimant had no limitation with regard to this domain. (T at 17-18). This conclusion is supported by substantial evidence. There is no evidence that Claimant's impairment affects her ability to acquire or use information. Plaintiff reported that Claimant had no difficulty understanding and learning. (T at 96). During the hearing, Plaintiff testified that Claimant did not have any problems with learning in an age-appropriate way. (T at 41). Claimant met her developmental milestones. (T at 173). Dr. Runkel, the treating physician, did not identify any issue with regard to Claimant's cognitive skills. (T at 178). Dr. Bostic, the State Agency review consultant, found no limitation in this domain. (T at 186). This evidence is more than sufficient to sustain the ALJ's conclusion.

### ii. Attending to and Completing Tasks

In this domain, the Commissioner considers the claimant child's ability "to focus and maintain . . . attention," and how well she can "begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them."

Examples of limitation in this domain include being easily startled, distracted, or overreactive to sounds, sights, movements, or touch; being slow to focus on, or failing to complete activities of interest; repeatedly becoming sidetracked from activities or frequently interrupting others; becoming easily frustrated; and requiring extra supervision to sustain attention. 20 C.F.R. §416.926a (h)(3).

The ALJ found no limitation as to this domain. (T at 18-19). This conclusion was supported by substantial evidence. Claimant was consistently described as alert and

attentive by her treating providers. (T at 215-16, 222-23, 225). Claimant was noted to color in an age appropriate way. (T at 103). Dr. Runkel did not identify any issue with regard to Claimant's attention span. (T at 178). Dr. Bostic, the State Agency review consultant, found no limitation in this domain. (T at 186). Although Claimant's ability to attend to and complete tasks would likely be affected during an acute symptomatic episode, there is no evidence that the impairment causes an underlying, consistent, marked limitation with regard to Claimant's functioning in this domain. The ALJ's decision should be sustained.

### iii.    Interacting and Relating with Others

With regard to the domain of interacting and relating with others, the Commissioner considers the claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).

Examples of limitation of functioning in this domain are: lack of close friends, avoidance  or withdrawal, overanxiousness or fear of meeting new people or trying new experiences, difficulty playing games or sports with rules, and difficulty communicating with others, and difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3).

The ALJ found no limitation in this domain. (T at 19-20). This conclusion is supported by substantial evidence. Plaintiff reported that Claimant's impairment did not affect her behavior with other people. (T at 98). Dr. Runkel did not report any limitations with regard to social/emotional skills. (T at 175). Dr. Bostic assessed no limitation in this domain. (T at 186). Although Claimant's condition may limit her socialization opportunities

(because of her need to remain in climate-controlled settings), there is no evidence it causes a marked (or, indeed, any) limitation with respect to her actual ability to interact with and relate to others. This Court finds no error with regard to the ALJ's conclusion.

### iv.  Moving About and Manipulating Objects

In this domain, the Commissioner considers how the child moves her body from one place to another and how she moves and manipulates objects. 20 C.F.R. § 416.926a(j). Examples of limitation in this domain include muscle weakness, joint stiffness, or sensory loss; difficulty ascending or descending stairs; "jerky or disorganized locomotion" or difficulty with balance; difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike); difficulty with sequencing hand or finger movements; difficulty with fine motor movement (e.g., gripping or grasping objects); poor eye-hand coordination when using a pencil or scissors. 20 C.F.R. § 416.926a(j)(3).

The ALJ found no limitation in this domain. (T at 20-21).  This conclusion was supported by substantial evidence.  Although Plaintiff reported that she needed to limit Claimant's running and playtime when she exhibited symptoms, Claimant was capable of standing and walking without help, ascending and descending stairs by herself, stacking blocks, playing with small toys, and holding crayons and pencils. (T at 97).  Dr. Runkel did not report any limitations in this regard. (T at 175).  In fact, he opined that Claimant had "no real restrictions to any activity," only recommending that she avoid "prolonged exposure to sun on warm days . . . ." (T at 212).  Dr. Bostic assessed no limitation as to this domain. (T at 187).  The ALJ's conclusion should be sustained.

### v.  Caring for Yourself

13

In this domain, the Commissioner considers the child's ability to "maintain a healthy emotional and physical state, including how well he or she gets physical and emotional wants and needs met in appropriate ways; copes with stress and changes in environment; and whether the child can take care of his or her own health, possessions, and living area. 20 C.F.R. § 416.926a(k).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she continues to place non-nutritive or inedible objects in his or her mouth, often uses self-soothing activities showing developmental regression or has restrictive or stereotyped mannerisms, does not dress or bathe themself age appropriately; engages in self-injurious behavior or ignores safety rules, does not spontaneously pursue enjoyable activities or interests, and/or has a disturbance in eating or sleeping patterns. 20 C.F.R. §416.926a (k)(3).

The ALJ found no limitation in this domain. (T at 22). Plaintiff reported that the impairment did not interfere with Claimant's ability to take care of her personal needs. (T at 98). Plaintiff described Claimant's self-care skills as "excellent" and advised that Claimant knows how to prepare her own ice packs and cool herself down without assistance. (T at 42). As noted above, Dr. Runkel reported that Claimant had "no real restrictions to any activity," other than prolonged exposure to the sun. (T at 212). Dr. Bostic assessed no limitation as to this domain. (T at 187). The ALJ's conclusion should be sustained.

### vi.     Health and Physical Well-Being

In this domain, the Commissioner considers the cumulative physical effects of the claimant's physical or mental impairments and their associated treatments or therapies on her functioning. 20 C.F.R. §416.926a (l).  Examples of limitation in this domain include: generalized symptoms (e.g. weakness, dizziness, agitation, lethargy psychomotor retardation); somatic complaints (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia); limitations related to treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); exacerbations from one impairment or a combination of impairments that interfere with physical functioning; the need intensive medical care to maintain health and physical well-being. 20 C.F.R. §416.926a (l)(3).

The ALJ found less than a marked limitation in this domain. (T at 23-24).  This conclusion is supported by substantial evidence.  Claimant certainly has some limitation with regard to her health and physical well-being, but the ALJ acted within her discretion in concluding that the limitation was less than marked. Claimant's condition requires careful monitoring and sustained attention, but her symptoms have not required inpatient hospitalization or a prescription treatment regimen.  Dr. Bostic found less than a marked limitation as to this domain. (T at 187).  The Regulations provide examples of impairments that functionally equal the Listings.  For example, functional equivalence would be found if there was a "combination of physical and mental impairments causing complete inability to function independently outside the area of one's home within age-appropriate norms." 20 C.F.R. §416.926a (m)(4).  Claimant's situation does not cause this sort of marked

15

limitation.

This is not, of course, to suggest that Claimant's condition is not serious, frightening, or limiting in certain respects. It is also not to suggest that Claimant might not have a "disability" in the commonly understood sense of the term. It is clear that her condition demands a great deal of attention, effort, and energy from Claimant and her loving caregivers. However, the standard for disability under the Social Security is strict and statutorily defined. Moreover, this Court is not permitted to consider the matter *de novo* or to allow sympathy to affect the outcome. The following observation from a Second Circuit Court of Appeals judge is apt:

> Denying statutory benefits to people in need of assistance is always an unpleasant task. The temptation to blur the distinction between individual need and statutory eligibility is strong; but our authority as judges often fails to match our sympathy for our fellow human beings. Absent [legal] transgressions, we have no more power to disregard the substantive and procedural eligibility limitations built into legislative benefit schemes than we have to change the nature and scope of the benefits themselves. It should not be otherwise.

Singletary v. Sec'y of Health & Human Services, 623 F.2d 217, 220 (2d Cir.1980) (Meskill, J., dissenting).

The question before this Court is whether the Commissioner's conclusions are supported by substantial evidence. For the reasons set forth above, this Court finds that the Commissioner's conclusions are so supported and the decision should therefore be sustained.

   **5.     New Evidence**

The Social Security Act provides that a district court may remand a case to the

Commissioner to consider additional evidence that was not included as part of the original administrative proceedings. See 42 U.S.C. § 405(g) (sentence six) ("The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.").

This type of remand, commonly referred to as a "sentence six remand," is only appropriate if new, non-cumulative evidence presented to the District Court should be considered by the Commissioner *and* if the claimant can establish good cause for having failed to present the evidence during the original administrative proceedings. See Lisa v. Sec'y of Dep't of Health and Human Servs., 940 F.2d 40, 43 (2d Cir.1991).

In the Second Circuit, courts employ a three-prong test to determine whether a sentence six remand is warranted. Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir.1988). First, the evidence must be "new" and not merely cumulative of evidence in the administrative record. Id. (citing Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833 (3d Cir.1984)). Second, the new evidence must be "material," *i.e.* "it must be relevant to the claimant's condition during the time period for which benefits were denied and probative." Id. (citing Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir.1975)). The "materiality" prong further requires a finding that there is a reasonable possibility that the new evidence would have changed the outcome before the Commissioner. See Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir.1991). Third and finally, the plaintiff must demonstrate good cause for failing to present the evidence earlier. Lisa, 940 F.2d at 43.

Plaintiff attaches several documents to her Brief.[6]  This Court has reviewed these documents and determined that a remand is not warranted.  One of the documents, a new patient evaluation from Dr. Patel, dated February 4, 2010, is already included in the administrative record (T at 200-201) and is thus not "new" evidence.  Several of the documents post-date the ALJ's decision, which was rendered on January 6, 2011.  More importantly, the information contained in the new records is consistent with the ALJ's conclusion.  In a letter dated September 13, 2012, Dr. Runkel notes the serious nature of Claimant's condition and confirms that managing the condition requires attention and effort.  This is consistent with the evidence already in the record.  The School Safety Plan demonstrates that Claimant is able to attend school with her age-appropriate peers, provided the school has a plan in place to avoid and address over-heating.  In the treatment note from November of 2011, Claimant was described as "very pleasant, interactive" and had "appropriate affect and demeanor," which is consistent with the conclusion that she has no limitation with regard to interacting with and relating to others.  There is no reasonable possibility that this evidence would change the outcome before the Commissioner if considered on remand.

---

[6]The documents are: (1) a two-page letter, dated September 13, 2012, from Dr. Runkel; (2) a letter, dated June 27, 2012, from Dr. Runkel, with a prescription for an air conditioning unit; (3) a two-page new patient evaluation, dated February 4, 2010, co-signed by Dr. Patel and Dr. Paul Krusinski; (4) a two-page treatment note, dated November 17, 2011, from Dr. Jamie Albert; (5) three lists of medications and vaccine history prepared by Dr. Runkel's office; (6) a discharge summary. dated August 31, 2012 from Moses-Ludington Hospital; and (7) Ticonderoga Elementary School's 2012-13 School Safety Plan.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers and the non-examining consultant, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering her decision that Claimant is not disabled within the meaning of the Social Security Act. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   November 19, 2013

Syracuse, New York

# V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge